UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JUL -8 PM 4: 33

CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 2:25-cr-33 |
| ) | |
| DONTAYVEUS THOMAS, ) | |
| Defendant. ) | |

**ORDER**
(Doc. 139)

Defendant Dontayveus Thomas moves to dismiss the indictment or, alternatively, to exclude S.W. as a Government witness based on the Government's late disclosure of discovery materials shortly before the June 4, 2026 trial date. (Doc. 139 at 1–2, 17.) Mr. Thomas argues the late disclosures violated Federal Rule of Criminal Procedure 16 and the Government's constitutional obligations under *Brady* and *Giglio*, prevented effective trial preparation, and caused the June 4 trial date to be cancelled. (*Id.* at 11–17.) The Government opposes dismissal and witness exclusion, arguing that it largely complied with its disclosure obligations, produced materials as they were identified, and any prejudice, to the extent it exists, can be cured by a continuance rather than by precluding S.W.'s testimony. (Doc. 141 at 1, 14.) For the reasons below, the motion is GRANTED IN PART, and the Government is prohibited from calling S.W. as a witness in its case-in-chief.

**Factual and Procedural History**

**A. Indictment and Early Discovery Production**

The Government filed a criminal complaint against Mr. Thomas on March 5, 2025, charging him with possession with intent to distribute cocaine base and fentanyl. (Doc. 1.) Mr. Thomas made his initial appearance on March 21, 2025. (Doc. 4.) On that same date, the court

entered an Order, pursuant to Federal Rule of Criminal Procedure 5(f), confirming the Government's constitutional obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. (Doc. 6.) This Order, in relevant part, provides that the Government must disclose *Brady* material to the defense promptly and disclose *Giglio* material "sufficiently in advance of trial in order for the defendant to make effective use of it at trial or at such other time as the Court may order." (*Id.* at 1.) The Order also states that the Government "has an affirmative obligation" to look for such information from all law enforcement officers who have participated in the investigation. (*Id.* at 2.)

On April 3, 2025, a federal grand jury returned an indictment charging Mr. Thomas with three counts related to a drug-trafficking conspiracy. (Doc. 9.) The following day, the court entered a pretrial order requiring the Government, within fourteen days of arraignment, to produce Rule 16 and Rule 12(b)(4) materials, *Brady* materials, witness names and addresses subject to any concerns about witness safety, and specified search warrant and electronic surveillance materials. (Doc. 11 at 1–2.) The order imposed a continuing duty to disclose additional evidence or material required by the order. (*Id.* at 3.)

The Government's initial discovery disclosures included search warrant materials, a number of reports concerning drug evidence and a vehicle stop, and related drug analysis reports. (Doc. 43 at 2–3.) The Government also indicated that it anticipated calling four civilian witnesses, later increasing that number to eight after the Superseding Indictment, while withholding their identities under Local Rule of Criminal Procedure 16(a)(3). (*Id.* at 3.)

On or about June 25, 2025, the Government made available for attorney review the testimony of a single civilian witness and related exhibits, which it asserted included evidence of

2

Mr. Thomas's drug-trafficking activity and firearm possession. (*Id.*) Defense counsel reviewed those materials at the United States Attorney's Office. (*Id.*)

On October 15, 2025, a federal grand jury returned a five-count Superseding Indictment. (Doc. 34.) The Superseding Indictment expanded the timeframe of the conspiracy charged in Count One and increased the amount of cocaine base attributable to Mr. Thomas, thereby exposing Mr. Thomas to a ten-year mandatory minimum on that count. (Doc. 42 at 4; Doc. 43 at 4.) Counts Four and Five added new firearms charges in furtherance of the drug-trafficking conspiracy, with Count Five carrying a consecutive five-year mandatory minimum if Mr. Thomas is convicted. (Doc. 42 at 4; Doc. 43 at 4.)

### B. Defense Concerns Related to Evidence of Firearms

At the October 28, 2025 arraignment and pretrial conference, defense counsel stated that the defense had "no idea" what quantity of discovery would be produced and had "no understanding" of the evidence supporting the expanded conspiracy or new firearm counts, emphasizing that it needed witness names and statements to prepare. (Doc. 92 at 9:15–10:7.) The court then asked the Government, "What additional discovery needs to be turned over to the defense in light of the superseding indictment?" (*Id.* at 10:8–10.) The Government responded, "Very little, Your Honor. There may be one or two issues that the government is looking at in terms of ensuring that everything has come over from various files, but the additional discovery owed under Rule 16 should be minimal." (*Id.* at 10:11–15.) When asked to confirm whether evidence of the expansion of the conspiracy and the firearms charges would come primarily from witness statements, the Government responded, "Primarily, your Honor." (*Id.* at 10:23–11:2.)

The court scheduled trial to begin on January 20, 2026. (Doc. 41.) In subsequent filings, Mr. Thomas reiterated that the defense lacked basic information about "where, when, or how" he

allegedly committed the new offenses, while the Government maintained that existing disclosures were sufficient and opposed early witness disclosure. (Doc. 42 at 2; Doc. 43 at 1–3.)

At the November 17, 2025 pretrial conference, the court stated that it appeared to be receiving "very different representations" about what evidence had and had not been disclosed, noting that the Government asserted that evidence had been presented to support each charge while the defense asserted that it had not. (Doc. 78 at 2:17–22.) Defense counsel stated that more than fourteen days had passed since arraignment on the Superseding Indictment, and the defense had not yet received "regular, run-of-the-mill discovery"—that is, Rule 16 and *Brady* materials—associated with that indictment. (*Id.* at 4:15–21.) When the court asked whether there was "normal discovery that comes out following an indictment within 14 days" and questioned whether there was "nothing of that sort" with respect to the Superseding Indictment, the Government responded, "No, Your Honor." (*Id.* at 20:8–12.) After summarizing its position as to what evidence had been disclosed, the Government stated it had "alluded to what we have disclosed [and] when we have disclosed it" and that "the additional relatively minimal disclosure would be to add to the weight of the evidence against Mr. Thomas." (*Id.* at 19:18–22.) After hearing from the parties, the court noted that, because "so much of [the Government's case] appears to be based on witness statements," disclosure of witness information close to trial could lead the defense to seek a continuance to conduct additional investigation beyond what two weeks would allow. (*Id.* at 20:16–23.)

On November 24, 2025, as part of its order on Mr. Thomas's motion for early disclosure of witness information, the court observed that the defense had only "scant information" linking Mr. Thomas to key elements of the firearm charges and that the Government's evidence appeared to rely exclusively on witness statements. (Doc. 51 at 3.) The court again recognized the tension

between the defense's need for early disclosure of witnesses and the Government's concerns regarding witness safety. (*Id.*)

On December 3, 2025, defense counsel met with the Government in an effort to resolve Defendant's Motion for a Bill of Particulars. (Doc. 58 at 3 n.2.; Doc. 62 at 4.) During this meeting, the Government outlined for defense counsel the story and evidence it anticipated presenting during its case-in-chief, including the names of at least five co-conspirators in the drug conspiracy and one co-conspirator in the gun conspiracy. (Doc. 62 at 4.)

On December 10, 2025, a grand jury returned a Second Superseding Indictment. (Doc. 64.) The Government later represented that the Second Superseding Indictment included the same charges as the First Superseding Indictment. (Doc. 117 at 1.)

At the December 17, 2025 hearing, the court learned that the Government had additional discovery to produce—including a "tranche" of materials that had not yet been disclosed—and that some Rule 16 materials were provided on November 27, 2025, despite the representation made on November 17, 2025 that no further Rule 16 discovery existed. (Doc. 74 at 9:25–10:8, 11:5–17.) Defense counsel explained they needed time to review the newly produced materials and to assess them before proceeding to trial. (*Id.* at 11:18–12:2.) Mr. Thomas agreed to continue the case from the January 20, 2026 trial calendar, although the parties did not agree on the length of that continuance. (Doc. 70 at 1; Doc. 141 at 6.)

The court subsequently scheduled the trial to begin on June 4, 2026 and ordered that witness lists and exhibits be exchanged by May 15, 2026. (Doc. 106.) The court did not set a deadline for disclosure of *Giglio*/Jencks materials, but the "Government, based on its agreement with opposing counsel, committed to producing" such material on that same date. (Doc. 141 at 7.)

## C. The May 15 Production

On the evening of May 15, 2026, the Government provided its witness and exhibit lists, filed its Rule 404(b) notice, and produced *Giglio* and Jencks materials. (Doc. 117 at 2; Doc. 115 at 2.) Mr. Thomas filed an emergency motion the next day. (Doc. 115 at 1.)

The court held a hearing on May 18, 2026. (Doc. 120.) At that hearing, defense counsel stated that, by the Government's count, the May 15 production appeared to include roughly 7,000 pages of material, in addition to extensive audio and video files. (Doc. 135 at 2:17–21.) Defense counsel contrasted the twenty-one-page index for the May 15 production with the approximately seven pages of indices produced during the prior year, estimating that "three times more discovery" had been produced in the preceding two-and-a-half days than during the entire pendency of the case. (*Id.* at 3:2–9.) At the time of the hearing, defense counsel had not had sufficient opportunity to fully review the material, but highlighted bank records, DEA 6s, and lab reports as examples of materials in the production that counsel believed would ordinarily be produced as Rule 16 discovery. (*Id.* at 3:20–4:11.) Defense counsel stated that it was not possible for the defense to review the materials and comply with the existing deadlines and confirmed that the defense would not be prepared to proceed on June 4. (*Id.* at 7:14–9:14.) When the court asked the Government whether all of the May 15 production needed to be withheld until May 15 because of witness safety concerns, the Government answered, "No, Your Honor," and clarified, "To be very clear, no, no." (*Id.* at 18:10–16.)

The Government did not concede that the materials cited by the defense were subject to Rule 16 disclosure. For example, the Government represented, "[T]hose bank statements do not belong to the defendant, and the government has . . . represented that it will not rely on them in its case-in-chief." (*Id.* at 13:11–13.) The Government said nothing about whether it believed the records were "material to preparing the defense." *See* Fed. R. Crim. P. 16(a)(1)(E)(i).

6

After the May 18 hearing, the court cancelled the June 4, 2026 trial date. A status conference was scheduled for May 26, 2026 to discuss appropriate next steps. (Doc. 121.)

The Government has acknowledged the May 15 production was "a very difficult volume to work with," (Doc. 149 at 8:19), and "even the pure *Giglio* [was] a substantial amount of information," (*id.* at 29:12–16). The Government represented that the May 15 disclosure was "too voluminous" and "too much for the defense to handle." (*Id.* at 37:5–7.) The Government has acknowledged that (in its opinion) "much of" the material it turned over was out of an "abundance of caution"—rather than material required to be disclosed under discovery or constitutional obligations—and, therefore, that material "perhaps could have been turned over sooner[,] and that would have taken some of the weight off that disclosure." (*Id.* at 10:18–23.) When the court asked the Government why it listed the reason for the disclosure of certain items as Rule 16 in one document and as an "abundance of caution" in another document, the Government indicated that it normally thinks of Rule 16 materials as material being used in its case-in-chief. (*Id.* at 6.)

### D. Post-Deadline Productions

On May 19, 2026, the Government disclosed transcripts related to Government witnesses whose recordings had already been produced and provided courtesy copies of previously disclosed materials. (Doc. 141 at 8.) On May 21, 2026, the Government produced a corrected version of a transcript previously disclosed on May 19 and an additional copy of a previously disclosed report. (*Id.*)

On that same day, the Government learned the Vermont State Police possessed additional, unreviewed materials that might bear on the case. (*Id.*) On May 22, 2026, the Government produced twenty-one additional items related to S.W. that had been discovered in the Vermont State Police files. (*Id.*) The Government's explanation as to the late discovery of these materials was simply that the trial team had previously met with the Vermont State Police, requested

materials, and believed they had everything. The Government has represented to the court that testimony from S.W. and D.W. was the primary evidence, although not the only evidence, supporting the gun charges.

At the May 26 status conference, the Government advised that it had found that 235 jail calls from S.W. "may contain discoverable material" and those calls had been disclosed only minutes before the hearing. (Doc. 136 at 3:15–19.) The Government stated the calls were from January through February 2025, outside the scope of the charged conspiracy, but that closer review showed material Mr. Thomas "may be entitled to have." (*Id.* at 4:1–7.) The court ordered the Government to complete its review and produce all outstanding discovery to the defense by 3:00 p.m. on May 29, 2026. (Doc. 136 at 11:22–12:1.)

On May 29, 2026, the Government made an additional production consisting of seventy-three items. (Doc. 141 at 9.) The Government states that the May 29 production included three recorded calls between witness S.L. and then-DEA Task Force Officer Jason Perry from around March 1, 2023; additional or updated criminal histories and potential *Giglio* material for Government witnesses; body camera footage from the February 24, 2023 incident in Hubbardton involving Mr. Thomas, S.W. and D.W.; additional reports concerning S.W.'s drug involvement and history of violence; and an interview with S.W.'s mother from November 16, 2022. (*Id.* at 9–10.) It also included material that the Government describes as *Brady* material.

### Standard

Federal Rule of Criminal Procedure 16(a) outlines the Government's discovery obligations. One requirement is particularly relevant in this case: the Government must permit the defendant to inspect and to copy items in the Government's possession, custody or control if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its

8

case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). Evidence is material under Rule 16 if "it could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). "[E]vidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Wilson*, 518 F. Supp. 3d 678, 686 (W.D.N.Y. 2021) (quoting *United States v. Stein*, 488 F. Supp. 2d 350, 356–57 (S.D.N.Y. 2007)).

Rule 16 also gives a district court broad discretion to remedy discovery violations. If a party fails to comply with Rule 16 or a discovery order, the court may order discovery, grant a continuance, prohibit the party from introducing the undisclosed evidence, or "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). Preclusion is not automatic. The Second Circuit has emphasized that exclusion is a "harsh sanction" that should not be imposed lightly. *United States v. Ulbricht*, 858 F.3d 71, 117 (2d Cir. 2017), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). In many cases, a continuance, adjournment, or more limited remedy will suffice. *See United States v. Felder*, 993 F.3d 57, 74 (2d Cir. 2021); *United States v. Walker*, 974 F.3d 193, 204 (2d Cir. 2020); *United States v. Miller*, 116 F.3d 641, 681 (2d Cir. 1997). Preclusion, however, remains available when late disclosure materially prejudices trial preparation and lesser remedies would not adequately cure the prejudice or protect the integrity of the proceedings. *See Ulbricht*, 858 F.3d at 117; *United States v. Mason*, No. S2 06 Cr. 80(NRB)., 2008 WL 281970, at *3–4 (S.D.N.Y. Jan. 25, 2008).

The Government also has constitutional disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). *Brady* requires disclosure of evidence favorable to the accused that is material to guilt or punishment. *Brady*, 373 U.S. at

9

87. *Giglio* extends that obligation to impeachment evidence. *See Giglio*, 405 U.S. at 154–55. In the Second Circuit, *Brady* and *Giglio* do not require immediate disclosure in every case, but they do require disclosure "in time for its effective use" at trial. *See United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001). If a witness statement is both Jencks Act material and *Brady* or *Giglio* material, the Government's constitutional disclosure obligation controls. *See United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008) (citing *United States v. Rodriguez*, 496 F.3d 221, 225–26 (2d Cir. 2007)) ("Complying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under *Brady*— a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500.").

## Analysis

### I.    The Government violated Rule 16 and the court's discovery orders.

The initial pretrial order required the Government to produce Rule 16 materials within fourteen days of arraignment. (Doc. 11 at 1.) By the Government's own accounting, at least six Rule 16 documents—including the results from searches of three smartphones whose owners are unidentified— were disclosed late. Defense counsel also identified bank records, DEA 6s, and lab reports as examples of materials that would ordinarily be produced as Rule 16 discovery. (Doc. 135 at 3:20–4:11.) The court notes that the Government's list of its May 15 disclosures includes over two hundred items listed as disclosed out of an "abundance of caution." Given the Government's acknowledgement that some of this material could have been turned over to the defense prior to May 15 and the fact that the decision was made to turn it over, the court questions whether some of this material should have been appropriately disclosed as Rule 16 material.

Regardless, the Government acknowledges that it failed to disclose materials in accordance with Rule 16 and the court's discovery order. Here, the violation is more serious because it followed repeated defense requests and court inquiries about the factual basis for the firearm

10

charges. The Government represented in October that any additional Rule 16 discovery would be "very little" and "minimal," and in November it told the court there was no ordinary post-indictment discovery to be produced with respect to the Superseding Indictment. (Doc. 78 at 20:8–12; Doc. 92 at 10:11–15.) Those representations were later contradicted by productions in November, December, and May. Finally, after the May 15, 2026 disclosure deadline, the Government produced twenty-one additional items related to S.W. from Vermont State Police files and, at the May 26 status conference, advised that it had identified 235 S.W. jail calls that "may contain discoverable material." (Doc. 136 at 3:15–19; Doc. 141 at 9.) Those calls were disclosed only minutes before the hearing. (Doc. 136 at 3:15–19.)

## II.    The Government did not disclose *Brady* and *Giglio* material in time for effective use.

The late S.W. disclosures also violated the Government's *Brady* and *Giglio* obligations. The Government's prosecution of the firearm charges appears to depend heavily on S.W.'s testimony. The court previously found that the defense had only "scant information" linking Mr. Thomas to key elements of the firearm charges and that the Government's evidence appeared to rely exclusively on witness statements. (Doc. 51 at 3.) The defense has maintained—and the Government has not contradicted—that there was no controlled purchase from any alleged conspirator, no seizure of drugs or firearms from Mr. Thomas, no photographs of Mr. Thomas with drugs or firearms, and no evidence or testimony connecting him to the firearms seized from Trayvon Kisling. (Doc. 139 at 2–3.) At a hearing on June 26, the Government represented to the court that testimony of S.W. and D.W. was the primary evidence supporting the gun charges. Against that background, impeachment and potentially exculpatory material concerning S.W. was central to the strength of the Government's case and, therefore, material to the determination of Mr. Thomas's guilt.

11

The May disclosures included impeachment and potentially exculpatory material concerning S.W. At the May 18 hearing, defense counsel represented that the production included proffer statements from two previously undisclosed civilian witnesses—S.W. and D.W.—discussing recantation of their testimony. (Doc. 135 at 5:16–6:6.) The later productions included additional materials from Vermont State Police files related to S.W. and 235 S.W. jail calls that the Government identified as *Giglio* material. (Doc. 144-5 at 1.) These materials, however, were not the only materials disclosed. They were produced either with, or after, a disclosure of documents that even the Government has conceded was "too voluminous."

The Government's characterization of some materials as Jencks material or material disclosed out of an abundance of caution does not resolve the constitutional problem. If the S.W. materials contain information that could be used to challenge the witness's credibility, such as inconsistent statements, recantations, benefits received, or criminal history, they must be disclosed under *Giglio*. Likewise, exculpatory and material evidence must be disclosed under *Brady*. To the extent the same materials are also Jencks statements, *Rittweger* forecloses the argument that ordinary Jencks timing permits the Government to withhold constitutionally favorable material until it is too late for effective use. 524 F.3d at 181 n.4.

The S.W. materials were not timely produced. A disclosure is not timely simply because it occurs before the witness takes the stand or because a continuance might later give the defense time to review it. The constitutional question is whether the material was disclosed in time for effective use at trial. *See Coppa*, 267 F.3d at 144. On this record, it was not. Trial was scheduled to begin on June 4, 2026. The defense received the substantial May 15 production on the evening of May 15. (Doc. 117 at 2; Doc. 115 at 2.) It then received additional S.W.-related materials on May 22 and 235 S.W. jail calls on May 26. (Doc. 136 at 3:15–19; Doc. 141 at 8–9.) It was not

12

possible for defense counsel to review, absorb, and investigate the material, show the material to Mr. Thomas, and comply with the existing deadlines. (Doc. 135 at 8:12–9:14.) Put another way, the late disclosures could not be remedied by slight adjustments to the defense's approach at trial—they prevented the defense from proceeding to trial at all.

## III.     Exclusion of S.W. is the appropriate remedy.

In selecting an appropriate remedy, courts consider the reason for the nondisclosure, the extent of prejudice to the opposing party, whether a continuance or other lesser remedy would cure the prejudice, and the surrounding circumstances. *See Ulbricht*, 858 F.3d at 115–17; *Miller*, 116 F.3d at 681; *Mason*, 2008 WL 281970, at *2–4. Although exclusion is a severe remedy, it is available when late disclosure materially impairs trial preparation and a continuance would not adequately cure the prejudice.

Exclusion of S.W. is warranted on this record. The Government's explanation for the late disclosures does not support a lesser remedy. The Government acknowledged that "for at least some" of the late-disclosed material, it was "a fair assessment" that the material had been in the Government's possession "for a period of time." (Doc. 136 at 8:11–16.) For example, the Government's filing indicates it obtained S.W.'s 235 jail calls on approximately February 19, 2025—more than one year before their production. (Doc. 144-5 at 1.) The Government identified a piece of *Brady* material—a DEA 6 regarding a meeting with witness A.C. that took place on January 16, 2026—that the Government produced on May 29. (Doc. 144-6 at 3.) The proffers of D.W. and S.W. took place on May 5, 2025 and September 9, 2025, respectively, and were produced on May 15, 2026. (Doc. 144-2 at 4.) The Government did not produce body camera footage from Castleton Police Department officers of the Hubbardton incident until May 29, but the Government had known about the incident for more than a year and therefore had reason to know such footage might exist. (Doc. 144-6 at 3.)

13

When asked why the disclosures were "happening now," the Government stated that it would want to explain in detail how some material was missed, but while preparing for trial it "recursively" reviewed material in its possession or that "might have been" in its possession and recognized that "there was more here than it had previously anticipated." (Doc. 136 at 4:14–23.) Yet when the court ordered the Government to explain when it first came into possession of the materials disclosed in May 2026 and, if some were not disclosed appropriately, why that occurred, the Government described many of the late disclosures only as "inadvertent."

That explanation is not sufficient given the history of this case. The defense had repeatedly sought discovery concerning the firearm charges; the court had previously questioned whether evidence tied Mr. Thomas himself to firearms; and the Government had represented that additional Rule 16 discovery would be "[v]ery little" and "minimal." (Doc. 78 at 2:17–3:5, 20; Doc. 92 at 10:11–15.) The Government's explanation is particularly unsatisfying because the original trial date of January 20 was not cancelled until December 22, (Doc. 73), and the applicable pretrial order required disclosure of witness lists and *Giglio* material by December 23, (Doc. 52 at 1). The Government's identification of substantial undisclosed evidence five months later therefore reflects not an unavoidable development but an earlier failure to conduct the review the trial schedule already required.

The Second Circuit's prejudice inquiry asks whether the late disclosure "adversely affected some aspect of [the defendant's] trial strategy." *Miller*, 116 F.3d at 681 (citation modified). That standard is satisfied here. The impact of the late S.W. disclosures was not limited to a discrete adjustment to the defense's trial presentation. The late disclosures disrupted investigation, motions practice, client consultation, impeachment preparation, and the defense's ability to proceed on the scheduled June 4 trial date. (*See* Doc. 135 at 7:14–9:14.)

14

A continuance would not adequately cure the prejudice. *Mason* is instructive on this point. In *Mason*, the Government produced significant evidence shortly before trial after failing to disclose it earlier, offered no adequate explanation, and argued that any prejudice could be cured by adjourning the trial. *Mason*, 2008 WL 281970, at *2–4. The court rejected that approach, reasoning that an adjournment would shift the burden of the Government's discovery failure to the defendants, defense counsel, and the court. *Id.* at *4. The same principle applies here. A continuance would give the defense time to review the late-disclosed S.W. materials, but it would not restore the lost June 4 trial date, cure the prejudice to a detained defendant who sought to proceed to trial, or address the Government's failures to provide discovery in a timely manner and identify and disclose central impeachment evidence earlier. *See Taylor v. Illinois*, 484 U.S. 400, 413 (1988) ("It may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the [opposing party] and the harm to the adversary process."). Prejudice was compounded because Mr. Thomas's trial had already been continued once after late-developing Government disclosures. After representing that additional Rule 16 discovery would be "very little" and "minimal," and later telling the court there was no ordinary post-indictment discovery to produce, the Government disclosed additional materials in November and December 2025 that led the defense to seek additional time and resulted in cancellation of the January trial date.

Exclusion of S.W. is also tailored. The court does not dismiss the indictment or exclude all late-disclosed material. It excludes the witness whose late-disclosed impeachment and related materials created the most serious prejudice. That remedy directly addresses the violation while preserving the Government's ability to proceed with other admissible evidence. It is therefore

15

proportional to the prejudice and less severe than dismissal. To do otherwise would be no sanction at all.

## Conclusion

Exclusion of S.W. is warranted under Rule 16 and independently justified by the Government's failure to disclose *Brady* and *Giglio* material concerning S.W. in time for effective use at the June 4, 2026 trial. Although witness exclusion is a severe remedy, this is the unusual case in which a continuance alone would not adequately address the violation. The late disclosures were not isolated, minor, or harmless. A continuance would provide time, but it would not cure the prejudice already inflicted on a detained defendant who sought to proceed to trial, nor would it adequately address the Government's unexplained failure to identify and disclose the materials earlier. The motion for sanctions is therefore GRANTED IN PART. The Government may not call S.W. as a witness in its case-in-chief.

DATED at Rutland, in the District of Vermont, this 8th day of July 2026.

Mary Kay Lanthier
United States District Judge